On the docket is Bell v. Horstmeyer and Eames. Clause number 5-13-0184. And my understanding is the athletes are going to divide their time equally, 10 minutes each. Perfect. Alright, so Mr. Roth. Thank you, Your Honor. As far as rebuttal, do I need to... You only have 5 minutes on rebuttal. In addition to the 20, which I doubt that I use... You use it or lose it on the first 20, but you got 5 minutes rebuttal. Thank you, Your Honor. But you don't have to use the whole 20. It's okay with us. May it please the Court. This is an automobile accident. It's a rear-ender. In this case, Mr. Eames, one defendant, was involved in an accident in front of Mr. Bell, the plaintiff, whom it is my privilege to represent. It was my privilege to represent Mr. Bell in the post-trial motion below, but it was not my privilege, by the way, to represent him at trial. And I say that because you may have some questions about what happened at the trial, and I may not be able to have a great deal of insight because there are some things I don't understand about what happened at the trial, including things primarily about the presentation of medical evidence. But we're all stuck with what happened at the trial, aren't we? Well, we are. Yeah. We are. And I'm going to try to explain it the best way I can, but I do believe, and I'll get to that point, that despite what happened at the trial, the plaintiff is entitled to a new trial. The reason I believe that, well, let me say it this way. For years, I've come here. I was telling Mr. Blyer that I've been coming here since Whitey Herzog first managed the Cardinals. And I've always done the same thing at this point in the case. I've stated the issues for review as they're in the brief. But today I'm going to do something different. Maybe I should always do it differently. The first issue for review is whether justice was done, and especially whether justice was done to the plaintiff in the court below. And if justice was not done to the plaintiff in the court below or the plaintiff in the court below, whether there is a legal basis to undo what was done. And I say that because I think we all learned the first week or maybe the first month in law school that this court and all the courts in Illinois are courts not only of law but courts of justice. And we learned that law is a way to accomplish justice. So we need to examine whether the result below was just, and we need to examine then whether the law gives a remedy, whether the law allows the injustice to be overturned. Now, in this case, Mr. Eames is ahead of Mr. Bell, and he causes an accident in a car driven by Mr. Davidson. This is on a 55-mile-an-hour highway in a construction zone, and Mr. Bell slows down and comes to a stop because he's required to do that under the facts, under the circumstances present. There's really nobody that disputes that. Following him as Mr. Wilson. I thought there were multiple versions of what happened in this whole accident. The parties had the people in their cars in all different circumstances. The jury heard all these different versions. People did. And the question is what version makes sense. But you just told me it was undisputed. Well, I believe it's undisputed based on what people could see and based on what they could see. For example, Mr. Eames says, well, after the accident. If witnesses testified to other versions, how could it be undisputed that that happened? Well, because you're taking little pieces out of a person's testimony. And what is ignored, in my view, is how the entire transaction occurred. And there's really no other explanation for how the entire transaction occurred than, I believe, what I set forth in the brief. Because there are statements, well, when Mr. Eames turned around five minutes or ten minutes after the accident, it didn't quite look that way. And then there's other testimony from Mr. Horstmeyer. Well, Mr. Horstmeyer gives one version and then he gives another. And, of course, we're familiar with some of the law on that in terms of depositions. When you make a judicial admission, you're stuck with it. So the testimony concerning how the accident occurred that makes sense, that flows, is, and it's undisputed, certainly, that Mr. Eames was trying to pass Mr. Davidson, did successfully pass Mr. Davidson, caused an accident, that Mr. Bell had to come to a stop, that Mr. Horstmeyer was following Mr. Bell. And I did, I made one error in my first brief. I said he was following one car length. He was actually following him one and a half car lengths. And the testimony... Did he refuse to take the ambulance to go to the hospital? He did. Well, he didn't refuse. And that's what's key here. After the accident, Mr. Bell called his brother. And his brother was coming to the scene. The police officer comes to Mr. Bell and says, do you want to go to the hospital? And he says, I've been waiting for my brother. He, in fact, went to the hospital after his brother arrived. So that's really hardly a refusal. I suppose it could be characterized as a refusal, but he went to the hospital. He was simply waiting for his brother. So he never called hardly an ambulance or anything? No, his brother took him. In fact, the police officer offered to take him or have him take him. And he explained to the officer that his brother was coming. So, in any event, we have Mr. Horstmeyer, who is traveling behind Mr. Bell at 24 feet, traveling at about 55 miles an hour, which is 81 feet a second. And at 24 feet, he has between a quarter and a third of a second to stop. The testimony quite clearly is that he plows into Mr. Horstmeyer. I'm sorry, Mr. Horstmeyer plows into Mr. Bell. How much can you reduce your speed in a third to a quarter of a second? The testimony is that he hit Mr. Bell. And there's really not much question but that Mr. Bell was propelled forward a substantial distance and hit a wall in the construction zone. Now, Mr. Bell testifies that he was knocked unconscious, that he was sore afterwards, and that he went to the emergency room. I mentioned justice before. These being the facts of the case, we know, and we would know if we're seven years old, that justice requires a finding of fault on the part of Mr. Eames, who caused the accident, and put Mr. Bell in harm's way, and on Mr. Horstmeyer, who actually did the hitting. We've got Hickox v. Irwin, a case opinion written by Judge Welch in 1981, which goes so far as to say that under these circumstances, even a driver that didn't use his turn signal and breaks suddenly when struck in the rear end is free of any contributory fault. And that a driver who strikes a vehicle in the rear end, even when there's no turn signal, even when there's sudden braking, is at fault. The fault here is clear. It, of course, begins to fall apart with the presentation of the medical testimony. What we do know is that Mr. Bell testified, and no one can dispute, that he was not unconscious in the accident. What we do know is that Mr. Bell states, and no one disputes, that Mr. Bell was sore and had some injury after the accident. I do not know why none of the medical bills were put into evidence, but they were not. That certainly provides things to argue about from the point of view of the defense. There isn't any question. I do not know why the family doctor was not put on the stand. I just really don't have any explanation as to why these decisions were made. The trial counsel was from Missouri. There's been huge changes in the law in Missouri in the last several years, I'm sure you're aware of. And I'm sure that that influenced trial counsel to some degree. Could the jury in this case have decided for the defendants based on the plaintiff's failure to prove damages? I mean, you know they get the instructions, it says you must prove these things, one of them is. I do not know because there was no special interrogatory. It was a general verdict. It was a general verdict. So the jury could have concluded that. However, the testimony is that Mr. Bell was struck in the rear hard enough to total out Mr. Horsemire's vehicle, I believe it totaled out Mr. Bell's vehicle as well, to propel him forward a substantial distance, knock him unconscious, and at least force him to go to the emergency room. Now, of course, there was no bill for the emergency room. And that's a problem. I admit that's a problem. The whole manner in which the medical testimony was presented is a problem for the plaintiff. But it's pretty clear. But wasn't there also an issue about whether the plaintiff's medical expert, there was a medical expert called, right? There was, yes. And he, you know, said that he couldn't really say whether this accident caused it or whether it was caused by a pre-existing illness. Well, that specifically relates to the back injury. And that's true. That's all there. It's all stated in terms of possibilities. Again. I mean, the case is kind of a mess. And, Mr. Roth, you can legitimately say that you're not responsible for it. But it is what it is. It is. And it's from the point of view of the presentation of the medical testimony, it's a mess. So much so that really a great injustice has been done. Now, maybe it's on several levels here. Maybe there's some remedy other than an appeal. I don't know. There is. But it's, in my view, too expensive under the circumstances and probably unrealistic. We've got a remedy in that way. There's disputed testimony about how the accident happened. There's at least questionable, if any, medical expert opinion about injuries being caused by the accident. There's no medical put in. And the jury determines the credibility of witnesses, determines what weight to give their testimony. Why shouldn't we just say the jury sorted it out? I do disagree concerning liability. I believe liability is absolutely clear. The various minimal statements about, well, I didn't think he was right there at the time and so forth, it's clear. Mr. Bell came to a stop. Mr. Bell, he had to come to a stop because of the first accident. He got blasted in the rear end. That's clear. And it's also clear that he was knocked out because of that. Now, I don't need a doctor to prove that. So there was clearly, under Hickox versus Irwin, there was clearly negligence, certainly on the part of Mr. Forsman. And I think on the part of both. Clearly, under the Pickering standard, and there was some injury, there has been, I believe, an injustice in the jury verdict. Not giving any award here, and we have a method by which that can be remedied. Admittedly, if I had my druthers, I'd have a case with better medical testimony. But I also suspect that if I had a case with better medical testimony or the way I think of it, a more comprehensive plan to present the medical testimony, I don't think I'd be here. So... All right. Thank you. Thank you very much. All right. Either Mr. Lawrence or is it Banger? Bousquet. Bousquet. Okay. Sometimes I have trouble reading the handwriting. Bousquet. Good morning. May I please take my watch off here so I don't go over my time? There'll be a light on over here, and when it turns red, you'll be done. Oh, for my ten minutes? You'll have a yellow light for a minute before that. Very good. Thank you so much. Your Honor, I represent Otis Eanes, one of the appellees, the first one, I guess, in the line of this alleged accident. And I want to make clear that this is not a case of undisputed facts. In fact, almost none of the facts are undisputed. It's kind of difficult to imagine a case with more divergent accounts of what exactly happened. But the only thing that everybody agrees about is that Mr. Eanes, my client, didn't collide with the plaintiff at all. The jury was free to find that Mr. Eanes' collision with the other vehicle up front was not the cause of the plaintiff's accident. We could have also found that the plaintiff's injuries didn't approximately result from Eanes' conduct. In fact, the jury could have found that Mr. Bell was not injured at all. And I want to point out that the Illinois law makes clear that the role of the jury is to resolve conflicts in the evidence, determine the credibility of the witnesses, and decide the way to be given each witness's testimony. The trial and public court can't reweigh the evidence. So that's what the jury did. It took all of these divergent accounts of what happened and decided that the plaintiff simply didn't meet his burden of proof. Now, counsel for the plaintiff mentioned that he felt this result was unjust, but what I didn't hear was the standard review that's applicable to this court. And the standard for J&OB is pretty high. Under the Patrick decision, the Illinois Supreme Court decision, a trial court should not grant J&OB if any evidence demonstrating a substantial factual dispute or where the assessment of the witness's credibility or the determination regarding conflicting evidence is decisive to the outcome of the trial. Well, that's our case. That's exactly what this case is about. The standard for a new trial, and mind you, under both of these standards, the court's required to review the facts in a light most favorable to the jury's verdict, not to what the plaintiff said. And the standard for a new trial, a new trial should be granted only where the decision of the jury is contrary to the manifest weight of the evidence, in other words, the undisputable evidence, and this isn't a case where any evidence is really undisputed. This case is similar to the Ford v. Griswold case, a case from a few years ago decided by Judge Welch, and I believe Judge Homer actually concurred in that decision. Ford was also an auto case in this court, and the court upheld a jury verdict in favor of the defendant because there was conflicting testimony as to what, if any, evidence, if any injuries, the plaintiff sustained as a result of the accident. In that case, there was evidence of preexisting injuries. The plaintiff had been involved in a couple prior automobile accidents. An MRI taken prior to the accident showed degenerative disc disease and a herniated cervical disc. And pretty significantly, the plaintiff's expert in that case, in the Ford case, testified that the preexisting conditions could have been exacerbated by the accident, but he admitted at trial that he couldn't tell what percentage of the plaintiff's medical treatment was accountable to the accident as opposed to the preexisting conditions. That's exactly what we have here. The plaintiff's own expert admitted at trial that the plaintiff had significant preexisting injuries. He had degenerative disease in his back. He admitted that the plaintiff didn't complain about any head injury to him, and he said he really could not tell which, if any, of the plaintiff's injuries were caused by the accident. And in the Ford case, this court affirmed the denial of the JMC and the denial of a new trial, affirmed the jury's verdict. And a particularly persuasive quote from that decision is this. The court said, The question of whom to believe and what weight to give to all the evidence was a decision for the trier of fact, whose determination should not be upset on review unless manifestly erroneous. It is the province of the jury to resolve conflicts in the evidence, to pass upon the credibility of witnesses, and to decide the weight to be given to the witness's testimony. Again, the jury here was free to believe that Eames didn't proximately cause the plaintiff's injuries. In fact, the plaintiff admitted that he was able to safely stop, and it was at least four seconds before he was hit by Mr. Horstmeyer. Mr. Horstmeyer gives a little bit different account and says that he was bumped into. Did the plaintiff refuse to take the ambulance? The plaintiff did refuse medical treatment at the scene. He didn't take the ambulance. Instead, he waited for his relative to show up. The ambulance was there at that time? The ambulance was there. Did he want that? He was offered that, and that's significant. You know, he testified that he later went to the emergency room, but again, we don't know. We didn't see the medical bills. We don't know to what extent Mr. Eames, or Mr. Bell, rather, had any injury that warranted his trip to the emergency room later. Except for Mr. Bell's testimony, and in the face of a jury verdict, that's simply not enough. The Stift v. Lozardo case, a decision from the Court of Appeals, says that where evidence is contradicted or where it's merely based on the subjective testimony of the plaintiff, the jury is free to disbelieve it. The jury didn't have to believe a single word that Mr. Bell said at trial, including that he was injured at all. And the Stift case was another auto injury case. The Court of Appeals and juries were against the plaintiff who claimed injury resulting from an automobile accident, and the Court affirmed the jury's verdict even though there was uncontroverted testimony that the plaintiff had ongoing pain, avoided sports and exercise due to that pain, and had shortness of breath and a permanent impairment of her muscle. The Court said that the jury was free to disbelieve it. The jury was free to weigh evidence, and the jury, in this case, properly found that the plaintiff did meet his verdict. I did want to mention one case that was cited in the reply brief, Chapman v. Foggy. And the plaintiff apparently cites that for the proposition that he didn't actually need to prove that he suffered injury as a result of the accident and it was enough that he simply said he was injured, which isn't the case. But in Chapman, the jury had found in favor of the plaintiff. The jury found that the plaintiff was credible as to her testimony about her injury, and so it affirmed the jury's verdict. In that case, the plaintiff's testimony was corroborated by two other witnesses, a relative and a friend. This was the case where the young lady got a splinter in an ice-skating rink and there was evidence that the splinters were obvious, and two other witnesses said, yes, she had a splinter. We saw it. In this case, the only evidence about plaintiff's injury is his own testimony, and the jury was free to disbelieve every bit of that. Here, the plaintiff's testimony wasn't corroborated by anybody, even his own expert witness. And so, and again, that's a stiff case that states that the jury may simply disbelieve what the plaintiff testifies to as to his or her own injuries. So, again, this is a case that was properly left to the jury. It was the jury's job to decide who to believe, what story to believe, and whether the plaintiff was injured. And in this case, the jury simply found that he wasn't. Is there any other questions? Thank you. Mr. Loy? Thank you, Your Honor. Good morning. May it please the Court. David Lawrence here for Andrew Horsmeyer, the other defendant in the case. Please let me know if you can't hear me. I have a tendency to speak somewhat softly. Mr. Roth began his argument stating the issue was whether justice was done. With all due respect, that's not the issue here. One could certainly argue that allowing the plaintiff to present his case the way he wanted to, call witnesses he wanted to in the order he wanted to, call an expert witness that he wanted to, and having 12 independent people take time out of their day to hear that case and make a decision, one could certainly argue that that was justice being done. It may not appear that justice was done to Mr. Roth or to the plaintiff, but when 12 independent people come in and make a decision based upon the evidence, one could certainly argue that justice has been done in this case. Now, we can argue about whether there was sufficient evidence for the jury's decision, and that's when we get into what evidence supported this, what evidence supported this. I think we can all agree that the evidence was very confusing in this case. There were three different people involved in the accident that testified. They all did give different accounts of how this accident happened. Now, it is undisputed, parts of it, at least that my client rear-ended Mr. Bell. That's undisputed, but that in and of itself does not prove the case. The case law says that a rear-end accident does not mean that there is any negligence on behalf of the following vehicle. There has to be something more. So we look into the hows and the whys of why Mr. Horsmeyer ran into the back of Mr. Bell. In this case, there is another piece of undisputed evidence. That is that Mr. Horsmeyer was struck by another car before he struck the back of the Bell vehicle. That is what caused him to lose control and not be able to stop just like Mr. Bell did. That evidence is not only undisputed, it is backed up by photographic evidence. In other words, the jury saw a picture of the damage to the side, the rear side of Mr. Horsmeyer's car where he was struck before losing control and hitting Mr. Bell's vehicle. Certainly, given the jury's role in the case, in deciding cases like this, deciding what to believe and who to believe and what was actually the cause of the accident, surely the jury has the option of deciding what happened and whether Mr. Horsmeyer had any negligence at all and whether that negligence was the cause of the impact of Mr. Bell's vehicle. If he was indeed struck while going 55 miles per hour on the highway, it's not unusual for somebody to lose control under those circumstances and not be able to stop. This was in a construction zone. All the rest of the testimony as far as how fast they were going, how far he was behind, is all in dispute. And he can come in here and say, well, the defendant said he was 24 feet behind going 55 miles per hour. But that's tempered with the facts from the plaintiff himself that says he gradually came to a stop when he saw it in front of him and waited three or four seconds before the impact. That's inconsistent with Horsmeyer's testimony as to how far behind he really was. But you know and I know and the jury knows this type of testimony is estimates from people who were in an accident years before. They're not out there measuring at the time. But that's exactly the role of the jury, to take all this evidence as a whole, listen to it, watch the witnesses, and determine who's telling the truth and what really happened. That's exactly what they did in this case. There is also the issue of – so I guess to wrap that issue up, certainly there's plenty of evidence where the jury could have decided that Horsmeyer either was negligent and that negligence was not the cause of the accident or was not negligent at all and the accident was caused entirely by someone else that hit him first. Mr. Roth is coming in here and asking this court to decide the jury cannot base their decision on that evidence. I don't think that's the law. The second issue is medical. It's exactly right that the plaintiff refused to take an ambulance from the accident scene. An ambulance was there. He decided he didn't need it for whatever reason. Maybe it was personal reasons. I don't know. But he did not. Whether he can diagnose himself as having a concussion, I don't know if that's law in Illinois or not. But what we do know and what the record shows is the jury heard no testimony from any doctor, any plaintiff's doctor, any emergency room doctor, any EMT, that the hospital or the emergency room visit was related to this accident. What we do know is that the plaintiff's expert, who did not examine the plaintiff but did review the records, that expert said he did not believe that the plaintiff had a head injury from the accident. He said that the plaintiff had preexisting back problems, preexisting knee problems, and you're exactly right. He couldn't tell what was caused from this accident and what he had before. In fact, the plaintiff's expert witness conflicted with the plaintiff's own testimony at the trial. The plaintiff's expert witness supposedly gave opinions based upon his review of the family doctor's records, but he acted on the stand like he couldn't even read those records, like he wasn't familiar with those records. In essence, it was a complete disaster for the plaintiff. That's sometimes what happens in trial. That doesn't mean that justice isn't being served. This is the way he decided to present his case, and this is what the jury felt. I think all this court needs to decide is whether there was some legitimate evidence upon which the jury could have based its decision, and if there was, affirm the trial court's decision. Thank you. All right. Thank you. Any rebuttal, Mr. Ross? Just briefly. Mr. Doran just said that the plaintiff should be stuck with the presentation of his case because that's how he decided to do it, which would be true if he decided to do it, but he didn't decide to do it. And that's why there is an issue of justice here. With regard to the accident, it is clear Mr. Eames caused an accident that caused Mr. Bell to stop. Mr. Horstmeyer struck the plaintiff in the rear end and blasted him up a ways and into a wall. Mr. Horstmeyer's testimony is that he was following at a distance which would give him one quarter to one third of a second to stop. And now he says, oh, well, somebody hit me, and that's what caused it all. How do you know when you've only got a quarter to a third of a second? Now, there's no question that Mr. Bell was in the car that hit the wall, and he says he was knocked unconscious. He doesn't diagnose, by the way. He doesn't give his own diagnosis of some sort of concussion, but he was knocked out and had pain afterwards. The negligence and the pain afterwards, as we see, as we see in a, they mention Chapman versus Foggy, is a sufficient basis upon which to reverse this case for a new trial on damages only. I wish we weren't here. I wish the damages presentation, evidence presentation had been much different. But I can assure you that if there is a new trial, it will be. Thank you very, very much for your attention today. All right. We thank you all for your briefs and arguments. We'll take this matter under advisement and issue a decision in due course. Court will be at recess for a few moments. All rise.